UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

JOEY K. MURR )
)
V. ) NO. 2:14-CV-161
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff was previously found to have been disabled and entitled to disability insurance benefits as of October 1, 2007. On June 13, 2011, it was found that her disability ceased as of June 1, 2011. This decision was affirmed by the Commissioner following an administrative hearing before an Administrative Law Judge ["ALJ"]. This is an action for judicial review of this, the final decision of the Commissioner in the plaintiff's case. Plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 14], while the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 16].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime*

*Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was, and is, a "younger" individual under the Commissioner's regulations. She has a high school education. It is undisputed that she cannot return to her past relevant work in telemarketing.

In order for plaintiff's previously awarded benefits to cease, she has to have experienced medical improvement related to her ability to work. In making the determination that she did experience such improvement in her condition, the ALJ utilized the eight-step sequential evaluation process required in 20 CFR § 404.1594, the requirements of which will be discussed herein.

The plaintiff's medical history is summarized in her brief as follows:

> The plaintiff was diagnosed with cancer in 2007. She was diagnosed by Dr. Michael J. Hodge as suffering from bilateral breast cancer with positive right sided axilla (Tr. 208). Dr. Hodge performed right and left modified radical mastectomies.
> The plaintiff was referred to the McLeod Cancer and Breast Center by Dr. Hodge. Dr. Ray Lamb diagnosed her as suffering from synchoronous bilateral breast cancer, high risk with right breast Stage IIIC, 12 lymph nodes involved (Tr. 241).
> The plaintiff had to be re-hospitalized in the Johnson City Medical Center in late November 2007 when she underwent debridement (Tr. 255).

2

The plaintiff also suffered from severe psoriasis and anxiety as early as April 2007 (Tr. 181). The plaintiff was referred to the Tri-Cities Skin and Cancer Clinic as suffering from plaque psoriasis on the arms, legs, scalp, buttocks, and stomach and they prescribed Enbrel (Tr. 301). It was noted that she had diffuse full body psoriasis which was worsening (Tr. 297). It covered 15% of her body surface area (Tr. 298). In April 2008, it was noted that the severity was 5 with 5 being the worst (Tr. 295). In December 2010, it was noted that she had full body psoriasis which had lasted for years (Tr. 285).

In regards to the plaintiff's cessation, she was seen by a Mr. Arthur Stair, III, MA, a psychologist, on April 6, 2011. He diagnosed moderate major depressive disorder and anxiety disorder, not otherwise specified, and opined that her ability to understand simple information or directions was not impaired as was her ability to comprehend and implement multi-step instructions. However, her ability to maintain persistence and concentration on tasks for a full work day and work week was moderately impaired due to the plaintiff's moderate major depressive disorder and mild anxiety disorder. Her ability to adapt to change was also moderately impaired and her social relationships were moderately or markedly impaired (Tr. 318).

A state agency reviewing psychologist, Dr. Mason D. Currey, Ph.D., opined that the plaintiff had affective disorders and anxiety disorders on may 2, 2011 (Tr. 321). He further opined that the plaintiff was moderately limited in her ability to maintain social functioning and in her ability to maintain concentration, persistence, or pace (Tr. 231). He opined that the plaintiff's allegations were partially credible and although she would have difficulty interacting with the general public he thought that the preponderance of the evidence showed no more than moderate impairments in functional abilities due to mental health problems (Tr. 333).

A state agency reviewing physician, Dr. Celia M. Gulbenk opined in June 2011, that the plaintiff could occasionally lift or carry 20 pounds, could frequently lift or carry 10 pounds, could stand and/or walk for about six hours in an eight hour workday and she could only use her right upper extremity occasionally overhead (Tr. 336). She could only occasionally climb ladders, ropes or scaffolds and she should avoid even moderate exposure to extreme heat (Tr. 339). Dr. Gulbenk also opined that significant medical improvement had occurred (Tr. 350).

The plaintiff continued to be followed by the McLeod Cancer and Blood Center. In March 2008, it was noted that she was on chemotherapy and that she had anemia secondary to that (Tr. 387). In January 2009, she had a skin infection (Tr. 374). In February 2010, it was noted that she had breast cancer, psoriasis, and situational depression (Tr. 371). In July 2010, it was noted that she had an incisional hernia of the lower abdomen as well as multiple large psoriatic lesions on the chest, abdomen, lower arms, lower legs and back (Tr. 369). It was noted that her psoriasis was a little better in the summer months and that she was going to undergo a hysterectomy (Tr. 365). She underwent that hysterectomy at the Unicoi County Memorial Hospital in June 2011 (Tr. 489).

A state agency reviewing psychologist, Dr. Robert de la Torre, Psy. D., opined that the plaintiff had affective disorder and an anxiety related disorder (Tr.

3

522). He opined that she would have moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace (Tr. 532). He opined that the plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms but that the plaintiff's allegations were not credible to the extent that they are inconsistent with the objective findings. He further opined that the plaintiff's symptoms and impairments would not prevent the plaintiff from performing work-like activities, but her concentration, persistence and pace and social ability were somewhat impacted by the diagnoses and, therefore, would cause moderate limitations in the basic work-like duties (Tr. 534). He opined that the plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods and to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances (Tr. 536). She was also moderately limited in her abiity to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace with a reasonable number and length of rest periods or peers and to respond appropriately to changes in the work setting. However, she was markedly impaired in her ability to interact appropriately with the general public (Tr. 537). He opined that the plaintiff could sustain concentration, persistence and pace with customary breaks within the restrictions outlined above, and would work better with things than people, had the ability to interact appropriately with supervisors and peers within the restrictions outlined above and could set goals independently and adapt to infrequent changes within those restrictions (Tr. 538).

      Another state agency reviewing physician, Dr. Saul Juliao, opined that the plaintiff had undergone significant medical improvement (Tr. 542) and could occasionally lift or carry 20 pounds and could frequently lift or carry 10 pounds, could stand and/or walk about six hours in an eight hour work day, and could sit about six hours in an eight hour work day (Tr. 546). She could only occasionally climb ladders, ropes or scaffolds or craw (Tr. 547) and she was limited in her ability to reach all directions and handle (Tr. 548). She was to avoid even moderate exposure to extreme heat (Tr. 549).

      The plaintiff was also under the care of Medical Care, PLLC and they noted in December 2010, that the plaintiff had depression which had begun after her breast cancer diagnoses (Tr. 268). She also had a hernia (Tr. 266).

      The plaintiff was hospitalized again in the Johnson City Medical Center in December 2011. She was diagnosed as suffering from two incisional hernias, loss of abdominal wall domain, and status post TRAM flaps and she underwent surgery (Tr. 556). On January 18, 2012, her surgeon, Dr. Hodge, noted that she had an open woulnd (Tr. 569). This apparently became infected and she was hospitalized again in November 2012 for a small bowel fistula and abdominal wall hernia. She underwent a small bowel resection with primary anastomosis and repair for abdominal wall hernia (Tr. 577).

[Doc. 15, pgs. 3-6].

At the administrative hearing, the ALJ took the testimony of Dr. Robert Spangler, a Vocational Expert ["VE"]. Dr. Spangler was asked to assume a person who "could do light work with frequent posturals, ropes, ladders, scaffolds, occasional overhead reaching with the upper right extremity, frequent handling with the right upper extremity.. [no] concentrated exposure to extreme heat, humidity and wetness..[who is] limited to simple, unskilled work, better with things than people." When asked if there would be jobs such a person could perform, Dr. Spangler stated that there were 60 % of 1,985,000 national jobs and 60% of 42,030 regional jobs (1,191,000 national and 25,218 regional) which such a person could perform. These jobs were as a food preparer, a dishwasher, a janitor and a maid. (Tr. 42).

On March 28, 2013, the ALJ rendered his hearing decision. He first described the eight-step procedure in 20 CFR 404.1594 which must be followed in determining whether medical improvement has taken place. At the first step, the ALJ must determine if the plaintiff is engaging in substantial gainful activity. At step two, he must determine if the plaintiff has an impairment or combination of impairments which meets or equals a "listed impairment." Then he must determine if medical improvement has occurred. If it has, at the fourth step he must determine if it is related to the plaintiff's ability to work. Then at step five, he must determine if one of the exceptions to medical improvement set forth in 20 CFR 404.1594(d) or (e) applies. If one of the exceptions in § 404.1594(d) applies, he must go to step six, which requires him to "determine whether all of the claimant's current impairments in combination are severe." If he determines that they are, he goes on to step seven, where he must determine the plaintiff's residual functional capacity ["RFC"], and whether she can perform past relevant work. If the plaintiff cannot perform his or her past relevant work, he

goes on to the eighth and final step to determine if there is other work a plaintiff can perform. (Tr. 13-14).

He then stated that the "comparison point decision," ["CPD"] from whence the foregoing evaluation must proceed was the medical finding that the plaintiff was disabled dated November 30, 2007. He noted that at the CPD date, she had malignant neoplasm of the breast which met secion 13.10A of the listing of impairments found at 20 CFR Part 404, Subpart P. Appendix 1 (20 CFR 404.1520(d). He found that she had not engaged at substantial gainful activity at any time since the CPD. He then found that medical improvement in the plaintiff's condition as of June 1, 2011, and that it was related to her "ability to work because, as of June 1, 2011, the claimant's CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD." He based this upon reports of her treating oncologist that the plaintiff was doing well and had no signs of recurrence of breast cancer in March and June of 2011. (Tr. 14-15).

However, the ALJ found that as of June 1, 2011, plaintiff did continue to have other severe impairments. He found that she these impairments were "status post breast cancer with residual incisional hernias and adhesions, chronic plaque psoriasis, obesity, affective disorder, and an anxiety related disorder." He found that the aftereffects of a hysterectomy and acid reflux disease were not severe. (Tr. 15-16).

Going on to the next step, the ALJ determined that none of her impairments or combination of impairments met or equaled the severity of any listed impairment. He then discussed her mental impairments. He found that she had no more than a mild limitation in her activities of daily living. In social relations, he found that she had moderate difficulties.

6

In concentration, persistence or pace, he also found that she had moderate limitations. (Tr. 16).

The ALJ then discussed the plaintiff's residual functional capacity. He found she had the RFC "to perform light work...except she can perform frequent posturals with occasioanl climbing of ropes, ladders, and scaffolds; she can perform occasional overhead reaching and frequent handling with the right upper extremity; and she must avoid concentrated exposure to extreme cold and even moderate exposure to extreme heat, humidity, and wetness. Mentally, she is limited to simple unskilled work, and would work better with things than people." (Tr. 17).

He then proceeded to discuss the plaintiff's testimony and his findings regarding her credibility. Among other things, he mentioned the plaintiff testifying "that she had an open wound recently, and she was unable to lift or do a lot because of the condition." He noted that she testified her daily activities were getting the kids off to school, going back to bed, waking up, fixing her breakfast, cleaning, doing laundry and grocery shopping. He noted plaintiff could drive. He then stated that the plaintiff's statements regarding the limitations imposed on her activities by her impairments were not entirely credible.

The ALJ found that although the plaintiff "described daily activities that are fairly limited," there were two factors which weighed against considering them to be "strong evidence" that the plaintiff was disabled. First he said "the allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." Second, even if the activities are that limited, the ALJ could not "attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak

7

medical evidence regarding her current physical and mental conditions..." as well as "other factors." (Tr. 18).

Likewise, he found that her psoriasis did not impose limitations to the extent of which she complained, noting that the record indicated "little, if any, discussion" of those purported limitations of "skin cracking and bleeding" with her doctor. He also noted no record of loss of range of motion with this condition. He ultimately determined that he found "the claimant is not credible" and that he gave "little weight to her testimony." (Tr. 19).

He then discussed in detail the findings of Mr. Stair and Dr. Stanley at the consultative mental evaluation, as well as the state agency physical and mental consultants. (Tr. 19-20). As for the weight given to those opinions, the ALJ gave some weight to Mr. Stair, and to the state agency psychologists. He also gave some weight to the state agency physical medical consultants, but found plaintiff had additional limitations regarding exposure to humidity and wetness due to her psoriasis. (Tr. 21).

Based upon the testimony of Dr. Spangler, the VE at the hearing, the ALJ found that there was a significant number of jobs in the national and regional economies which the plaintiff could perform. He stated that he concluded "that as of June 1, 2011," plaintiff could do those jobs. Accordingly, he found "the claimant's disability ended as of June 1, 2011." (Tr. 22).

Plaintiff argues that the ALJ erred in three respects. First, she maintains that he did not comply with the requirement's of *Difford v. Secretary of Health and Human Services*, 910 F.2d 1316(6th Cir. 1998) and attendant Social Security Rulings. Secondly, she asserts that the ALJ's RFC finding, and his hypothetical to the VE, were not supported by substantial

8

evidence. Finally, she asserts that her waiver of her right to counsel was not "knowing and intelligent," and that she was prejudiced by her lack of counsel at the administrative hearing.

*Difford*, *supra,* was the subject of Acquiescence Ruling ("AR") 92-2(6). That AR, which applied only in the Sixth Circuit, was replaced on a nationwide basis by Social Security Ruling ("SSR") 13-3p in 2013. *Difford*, and these rulings, require the Commissioner in a cessation of disability case to not just determine that the person's ability to work changed due to medical improvement in the condition(s) that originally rendered them disabled, but to determine if the person was disabled for any other reason through the date of the Commissioner's final decision (the ALJ's ruling). In other words, there must be substantial evidence not only to support the ALJ's decision that plaintiff's original period of disability ended on June 1, 2011, but that she remained capable of substantial gainful activity (not disabled) through the date of the Commissioner's final decision on March 28, 2013.

At various places in the opinion, the ALJ focuses specifically on June 1, 2011. (Tr. 13, 15, 16, 17, 21 and 22). It is also true that he never says specifically that the plaintiff was not disabled at any point through the date of his decision on March 28, 2013. However, throughout his opinion, including his review of the plaintiff's testimony and the medical evidence, it is clear that he considered the evidence of impairment all the way down to the date of his decision. The Court has reservations that it is a sufficient violation of *Difford* and SSR 13-3p to not use the magic words "through the date of this decision" when virtually all the evidence and testimony mentioned and analyzed comes from the period long after the plaintiff's disability was found to have ceased. That is not to say that it could not have been made more technically clear, but it is doubtful that this oversight alone would justify a

9

remand.

However, the issue of substantial evidence is much more serious. She had extensive difficulty with surgical wounds healing. It is true, as pointed out by the Commissioner, that her hernia repair in November, 2011, finally healed by March, 2012, although during the intervening months it was the subject of concern to Doctor Hodge (Tr. 566-572). However, she underwent two surgical procedures in November, 2012. The first on November 23, 2012, was for repair of an abdominal wall hernia caused by an infection from the earlier installation of mesh which never healed properly. (Tr. 579). Four days later, after developing a fistula of the small bowel, a second hernia repair was performed. (Tr. 577). As of February 4, 2013, the wound had not healed. (Tr. 581). Defendant testified at her hearing on February 8, 2013, that she had lived with an open wound in her abdominal area for over a year (Tr. 38). Defendant argues that these conditions caused no lasting effects, but the Court is unsure how anyone knew this. The ALJ mentioned the wound problem and that the plaintiff testified that she "she was unable to lift or do a loth because of this condition (Tr. 18). However, the record itself does not indicate at all how this condition finally resolved.

More troublesome is the fact that all of the state agency medical consultant evaluations were from prior to November of 2011, when the first hernia surgery was performed. (Tr. 335-343, 348-352, 540-544). The Commissioner argues that it is up to the ALJ whether to order, as the plaintiff suggests, a physical consultative examination. However, when all of the state agency assessments, which provide the substantial evidence upon which the RFC is based, predate the recurring surgeries and non-healing wounds, a consultative examination would have either filled this void, or indicated the existence of conditions which would seriously

10

diminish the plaintiff's vocational capabilities. This lack of proof seriously diminishes the ALJ's assessment of the plaintiff's credibility. It likewise robs the decision of being substantially justified.

The case should be remanded for a consultative physical examination, and introduction of any other proof the plaintiff or Commissioner may wish to introduce. It is therefore respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 14] be GRANTED insofar as it seeks a remand, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 16] be DENIED.[1]

Respectfully submitted,

  s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).